L. B. LINDSAY, PLAINTIFF IN ERROR, v. THE PEOPLE AND WILLIAM BRYON, DEFENDANTS IN ERROR.

LAW OF A CASE.—A decision of the supreme court in a given case, even although it be erroneous, becomes the law of the case upon the points involved, and can not be reviewed, altered, or changed upon a subsequent hearing in this court.

ERROR to the district court of the second judicial district, Ada county.

J. Brumback, R. E. Foote, and Milton Kelly, for the plaintiff in error.

J. R. McBride, J. R. Lewis, and H. E. Prickett, for the defendants in error.

Opinion by WHITSON, J.; HOLLISTER, J., concurring specially in the judgment. NOGGLE, C. J., dissented.

This cause is brought to this court upon two assignments of error, viz.: 1. The complaint is insufficient in law to maintain the action. No user of the office by either of the claimants is shown by the complaint or either of the answers, and it appears upon the face of the pleadings that the term of the office for which the defendants claimed had not yet commenced at the time of the beginning of the action. 2. The judgment is null and void upon the ground that the trial was had before the finding of facts was made and the judgment rendered by the judge at chambers, and not at any term of the district court.

The action was commenced at the November term, 1870, of the district court of the third judicial district of Idaho territory, in and for the county of Ada, and by stipulation of the parties the cause was continued beyond the term,

and upon five days' notice, as stipulated, the cause came on to be heard on the twentieth of December, 1870, at which time all the parties to the action appeared and went to trial upon the issues formed by the complaint and answers of the two defendants. The defendant Lindsay, however, moved to have the action dismissed, upon the ground that the complaint did not state facts sufficient to constitute a cause of action, in this, that it contains no allegation that either of said defendants has usurped, intruded into, or unlawfully holds or exercises the said office of sheriff of Ada county, Idaho territory. At what particular stage of the proceedings this motion was made does not appear, except that it was made and denied on the twentieth of December, 1870. The complaint discloses that the term for which the defendants claimed to have been elected would commence on the first Monday of January following. The answers of the defendants admit all that is alleged in the complaint, besides alleging the grounds upon which they claim to be entitled.

Neither claims any right to the office before the first Monday in January, nor is such an allegation made against them. The judgment of the court was as follows: viz.:

"On the twentieth day of December, 1870, this cause came on to be heard, as per agreement of parties, upon notice duly given, before Hon. J. R. Lewis, judge of the third judicial district of Idaho territory, at chambers, in Boise city, Ada county, Idaho territory, on the pleadings and evidence. The People appeared by Jos. W. Huston, Esq., United States district attorney. The defendant, L. B. Lindsay, appeared by Messrs. Rosborough, Brumback, Heed, and Miller, and the defendant, Wm. Bryon, by John R. McBride and H. E. Prickett, and the evidence, pleadings, proofs, and exhibits having been heard and considered, and the findings of fact and conclusions of law of said judge having been made and filed, whereby it is decided that the defendant, Wm. Bryon, at the general election held in and for said county, on the sixth day of June, A. D. 1870, received for the office of sheriff of said county of Ada a majority of all the legal votes cast for said office of sheriff,

and was duly elected to said office of sheriff of Ada county, for the term of two years from and after the second day of January, 1871. Now, therefore, it is hereby adjudged that the said Wm. Bryon was duly elected to said office of sheriff of Ada county, Idaho territory, at the election held in said county, on the sixth day of June, 1870, for the term of two years from and after the second day of January, 1871; and that the right to said office for said term be and the same is hereby awarded to him, the said Wm. Bryon.

"It is further adjudged that the said defendant, L. B. Lindsay, was not elected to said office at said election, and that he be precluded therefrom."

While in some instances this court might conclude that the defects of the complaints were cured by the evidence in this case, we are precluded from any such conclusion, because the judgment in the case discloses that the judge only found that on the second of January, a time not yet arrived, Wm. Bryon would be entitled to the office, and that L. B. Lindsay would not. We can not presume that the judge found Lindsay intruding into an office not yet even claimed by him, and the very wording of the judge is, that Lindsay be precluded, not excluded, therefrom.

It is, however, claimed that section 279 of the civil practice act was intended to try the right to an office before the actual intrusion into it. That section is one of seven under the title of "actions for the usurpation of an office." The first section under that title provides for an action upon the information of the district attorney, or the complaint of a private party, against any person who usurps, intrudes into, or unlawfully holds or exercises any public office, civil or military. The second section of the act provides that, in addition to the statement of intrusion, it may also be set forth in the complaint who is rightly entitled to the office, and in such case, upon proof by affidavit, that the usurper has received fees or emoluments, he may be arrested and held to bail as in other civil actions. The third section provides that judgment may be rendered upon the right of the defendant, and also upon the right of the party alleged to be entitled, or only upon the right of the defendant, as

justice shall require. The fourth section of the act provides, that if judgment be rendered in favor of the person alleged to be entitled, he shall be entitled after taking the oath of office, and executing the official bond, to take upon himself the duties of the office. The fifth section of the act provides, that if judgment be rendered in favor of the person alleged to be entitled, he may recover by action the damages sustained by reason of the usurpation. The sixth section of the act provides, and this is the section upon which counsel for Bryon rely, that " where several persons claim to be entitled to the same office or franchise, one action may be brought against all such persons, in order to try their respective rights to such office or franchise."

It is claimed that two persons can not intrude into the same office at the same time, and therefore that the section just cited must mean that the action can be begun and tried in advance. It is undoubtedly true that two persons can not, one *de facto* and the other *de jure*, be in possession of the same office, at the same time, where the office is of such a character that the law only provides for one incumbent; but does it necessarily follow that this law was made expressly for this case, or one similar to it? Might it not have been intended for that class of cases where two or more persons are required by law to fill the office? Suppose that at the next election three new county commissioners should be elected, and the present incumbents should refuse to give up to the newly elected officers, would not this section be the very one which the district attorney would go to for authority to bring his action? But the answer to this is, that the statute provides that the singular number shall include the plural and the plural the singular, and therefore it might be brought under the provisions of section 1 of the act.

This course of reasoning would just as well allow A. to sue B. and C. together, where he had a separate cause of action only against each. Each county commissioner of Ada county has a separate and distinct title to his office, and his right does not depend, so far as his election is concerned, on the title of the other two, although the office is

joint and requires all three to fill it. Without the aid of this section, if these commissioners should attempt to usurp the office, separate actions would have to be commenced against each of them to try their respective titles, and yet this could not be done under this section until there was an actual user.

Section 7 of the act seems to answer the whole question, which provides that "when a defendant against whom such action has been brought is adjudged guilty of usurping or intruding into, or unlawfully holding any office, franchise, or privilege, judgment shall be rendered that such defendant shall be excluded from the office, franchise, or privilege, and that he pay the costs of the action. The court may also, in its discretion, impose upon the defendant a fine not exceeding five thousand dollars." The section just cited provides that in such action, if the defendant is adjudged guilty, he may be fined and shall be excluded from the office. If there are two classes of actions provided for in the act, it is impossible to so determine from anything which appears in the first five sections of the act, and the seventh section certainly precludes any such construction.

Section 40 of an act relative to elections is thought to throw some light on the subject by providing that the manner of contesting elections in that act shall not impair in any way the right of any person to contest any election in the manner otherwise provided by statute. What is the manner otherwise provided by statute? Why, the old common law remedy, or rather an action which has taken its place, by an information in the nature of quo warranto, as provided for in section 274, and the six sections following under which an election can be contested, but not until there has been an actual user.

If section 279 is intended to try cases like the one at bar, then the legislatures of New York, California, Oregon, and Idaho have been very stupid. All three of those states have almost the identical act with ours in relation to the usurpation of an office or franchise, and in New York and California, under the title of "actions for the usurpations of an office," there is a section identical with ours, section 279. In each

of those states the legislature has provided a way to con-
test elections independent and outside of the action for the
usurpation of an office. Our legislature attempted to pass
a law for the contesting of elections, but conferred the power
upon a court which this court has decided could not have
any common law jurisdiction conferred. Each of those
states has, then, undertaken to provide for contesting elec-
tions in a separate statute from the one providing for the
excluding of an intruder.

It is unreasonable to suppose that New York, which has
the most complete code of practice of any state in the Union,
would make complete and ample provision for contesting an
election, and then place a small, and, when placed alone, a
senseless section of about three lines under a title and be-
tween the sections of a law to which it has no reference and
bears no relation. It will not be contended with any seri-
ousness that actions in the nature of *quo warranto* can be
sustained in cases where there is no user. It has been held
in New York, that "an information does not lie against per-
sons for merely claiming a corporate franchise, and if the
information charge them with claiming without authority,
and exercising the franchises of a corporation, etc., a plea
denying the user is sufficient.

There is no such action known to the common law as
contesting an election before user, and no authority has been
conferred on the district courts by statute for trying the
title, except by an action which has taken the place of the
old action of *quo warranto.*

It is claimed, however, that this case is *res judicata*, and
that it has been decided, so far as the jurisdiction of the
court was involved in the decision of the motion, to quash
the certiorari brought to this court at the last term.

Justice Lewis tried this case originally, and at the last
term a writ of certiorari was allowed to bring the case into
this court, and upon a motion to quash the writ, Justice
Lewis delivered the opinion of the court. The judge no
doubt felt a very natural desire to have the proceedings
below sustained. He went into a very elaborate and un-
necessary opinion, in which I concurred generally, as

appears of record, when in fact I ought not to have con-
curred, as I only intended so to do except as to the judg-
ment, and it is not now necessary for me to express my opin-
ion as to all the questions therein discussed.   It has become
the law so far as these questions have been adjudicated.
A decision then that the court did have jurisdiction of the
case was as binding upon the parties as the decision of this
court would now be that it did not.   I can not go back of
that decision without stultifying myself, however much I
might desire, because it has become the law of the case as
much as any statute could make it.

The court in that case said: " The matter in dispute in
this case was the office of sheriff." Both Lindsay and
Bryon claimed to be entitled to the office, and the question
to be determined was the respective rights of the parties to
such office.   It is claimed by Lindsay that the court below
erred because it was not alleged in the complaint that one
of the defendants had usurped said office; that the court or
judge had no jurisdiction of the subject-matter.   Section
279 of the civil practice act provides that when several per-
sons claim to be entitled to an office, an action may be
brought against all of such persons to try their respective
rights.

Now it is clear that but one person can be in the actual
possession of an office; hence, if the view of Lindsay be
correct, section 279 has no force, because several persons
can not at the same time usurp an office.   But be this as it
may, there is no doubt but that the court below had juris-
diction of the subject-matter.

However much I might be disposed to reverse this case,
had it not before been in this court, I think that the parties
secured, in the case of the certiorari, a decision upon the
jurisdiction of the court over the subject-matter, which is
conclusive in all future stages of the same case.   The ques-
tion of the right of the judge to try the case at chambers
was not decided in the certiorari case, and that question is
properly here for review.

The parties stipulated to try the case in that way; and
while it is true that no consent will give jurisdiction of the

subject-matter, the court, under the decision above cited, needed no jurisdiction of the subject-matter, and therefore the consent given was not of jurisdiction of the subject-matter, but of the parties, and of the manner and time of trying the case.

The great mistake made by Lindsay, was in bringing his certiorari, in the first instance, and getting an adjudication upon the only good point in his case, and the very one upon which he asks this court to adjudicate differently from what it has already done. It may be insisted, that because he was told in that case to bring his case here upon a writ of error, therefore it was not intended to pass upon those questions. By inspection of the decision, it will be seen that the court did not pass upon the chambers jurisdiction, and therefore a writ of error was necessary to test that question. So far as the other question is concerned, while the court passed upon it, it stated that, conceding that the court had exceeded its jurisdiction, the proper mode of getting here was by writ of error.

For these reasons, however erroneous the judgment, I think it will have to be affirmed.

Judgment affirmed.

HOLLISTER, J., specially concurring in the judgment:

I concur with Justice Whitson in the opinion that the judgment of the district court should be affirmed, but for reasons which differ from those from which his conclusions are drawn. It has been urged that the judge of the district court who tried this case at chambers, erred in counting the ballots cast for the respective parties, with a view to determine therefrom which was duly elected, and this proceeding has been animadverted upon with considerable severity; but as the court is unanimous in the opinion that the record does not present this question, no consideration can properly be given to it, and it need not therefore be discussed.

The only questions presented by the record are: 1. Whether the court had jurisdiction of the subject-matter; 2. Whether the complaint states facts sufficient to consti-

tute a cause of action. To both of these questions my answer must be in the affirmative.

Jurisdiction of a subject-matter, in its general sense, is defined to be a power constitutionally conferred upon a judge or magistrate to take cognizance of and decide causes according to law, and to carry his sentence into execution. (6 Pet. 591; 9 Johns 239.) It is the law which gives jurisdiction; the consent of parties can not therefore confer it in a matter which the law excludes. (1 Nott & M. 192; 3 McCord, 280; Breese, 32.) The district courts of this territory are courts of original general jurisdiction, made such by the organic act, and may take cognizance of all cases in chancery, as well as under the common law, and of such as are provided for by the territorial legislature. It can not be doubted that these courts are clothed with authority to try the title to an office. This authority is expressly given in chapter 4 of the civil practice act, and is supported by the case of the *People* v. *Pease*, 27 N. Y. 45, decided by the court of appeals of the state of New York in 1863. The object of the statute evidently is to test the right of any one or more persons who intrude into or unlawfully hold or exercise a public office as against the people, or another lawfully entitled to it, as well as the respective rights of several persons claiming to be entitled to it. The statute is a substitute for the common law writ of *quo warranto*, which was in the nature of a writ of right for the king, against him who claims or usurps any office, franchise, or liberty, to inquire by what authority he supports his claim in order to determine the right, but the process under it, unlike the proceeding by *quo warranto*, is a civil process.

It is urged with great earnest, notwithstanding, that because the complaint shows no user, the court had no jurisdiction of the subject-matter, and that the judgment is *coram non judice*, and therefore void. I must confess that this is a novel mode of determining a question of this character. As has been shown, jurisdiction of a subject-matter is conferred by law. Neither consent of parties, the efflux of time, nor the happening of any contingency will give it; and yet

it is seriously urged, that because no usurpation or user of the office is alleged, the court exceeded its jurisdiction in entertaining the action. Numerous supposed cases have been put to prove the soundness of this position as instances. "As well might a court say, that because justices of the peace have by law the exclusive right to hear, try, and determine all common assaults and batteries, that if a person is arrested and brought before a justice of the peace, charged with an offense not committed, but with an assault that he may possibly commit two months hence; that such justice may legally retain such a case; that he should not dismiss the case for want of jurisdiction. Can it be said, because justices of the peace have jurisdiction to try assaults and batteries, that for that reason they have jurisdiction of the subject-matter before an offense has been committed? And as well might the court determine that because justices of the peace have the exclusive right to try and determine cases of forcible entry and detainer, that such justices have jurisdiction of the subject-matter of such actions before an offense has been committed—before force has been used or entry into the premises been made, or the premises have been unlawfully detained, and that all this is not an excess of jurisdiction."

In these hypothetical cases it is conceded that, by law, the justices had authority to try assaults and batteries and forcible entry and detainer; and yet, because some person, ignorant of the facts of the case or the law, had been unwise enough to bring the action before the cause of it had accrued, the court had no jurisdiction of the subject-matter.

These illustrations serve to show what has been apparent throughout the discussion of this question, that those who make the objection have confounded the distinction between the *jurisdiction* of a court and its erroneous *exercise.*

The logic of the argument is simply this: "It is true jurisdiction has been given to try the respective rights of the parties to the office; yet, because the time for bringing the action had not arrived, the court had no jurisdiction of the subject-matter," thus mistaking its inability to exercise

it in the particular case for the want of it. This objection is of no more force than if urged to an action in ejectment commenced in the district court by the owner of certain premises leased to a tenant before the demise expired, or on a promissory note before its maturity, in neither of which can it be said that the court had no jurisdiction of the subject-matter. In the cases supposed, if the actions were sustained, the judgments, though erroneous, would be binding upon the parties unless reversed by a higher tribunal, and could be enforced by execution without rendering the opposite parties, the justices, or the officer who executes the process, liable as trespassers; nor could they be attacked collaterally in any other action. It is contended that the judge of the district court had no authority to try the case at chambers, and that in doing so he exceeded his powers, and his judgment is therefore void.

This objection, as well as that to the jurisdiction of the district court, is singularly at variance with the whole course of proceeding on the part of those who urge it. While pressing it, the court at the same time is asked to examine the entire record, and to determine whether there was not error committed in the finding of facts. In other words, the court should look into the merits of the case, which can only be done when possessing jurisdiction. If the objection to the jurisdiction of the district court is not well taken, that to the jurisdiction of the judge at chambers is not tenable. Numerous authorities, both English and American, have been cited in support of the position that independently of a statute a judge at chambers has authority to hear and determine a case of this character, and they are not without great force, but it is not necessary to consider them, inasmuch as jurisdiction has been expressly conferred by the legislature in section 617 of the act of January 15, 1869, which provides among other things that district judges at chambers may try and determine writs of *quo warranto*.

The parties having entered into a stipulation that the case might be heard at chambers, it is difficult to perceive the propriety of interposing such an objection in this court for the

first time.   Had counsel any just reason to believe that the
judge had no authority to try the case at chambers, ever y
rule of correct practice demanded that no agreement should
be entered into, the effect of which would be to take it out
of the proper jurisdiction and send it to a tribunal without
authority to hear it.   It may not be within the limits of
judicial propriety to say that such a proceeding was a
fraud upon the court, and merits the severest censure;
but the observation may be permitted that the effect of it,
if successful, would have been to discontinue the suit by
indirection, and thus baffle the ends of justice.   Legal
ethics are not slow to place the seal of disapprobation upon
a practice of this character. .

I will now proceed to the other question, " that the
complaint does not state facts sufficient to constitute a
cause of action."   The solution of this question depends
upon the proper construction to be given to the statute
under which the action is brought.

Section 274 is as follows: "An action may be brought by
the district attorney in the name of the people of the
United States, and of the territory of Idaho, upon his
own information, or upon the complaint of a private party,
against any person who usurps, intrudes into, or unlaw-
fully holds or exercises any public office, civil or military,
or any franchise within this territory.   And it shall be the
duty of the district attorney to bring the action whenever
he has reason to believe that any such office or franchise has
been usurped, intruded into, or unlawfully held or exer-
cised by any person, or when he is directed to do so by the
governor."   Section 275 provides, that whenever such action
is brought, the district attorney, in addition to the state-
ment of the cause of action, may also set forth in the com-
plaint the name of the person rightly entitled to the office,
with a statement of his right thereto; and in such case,
upon proof by affidavit that the defendant has received fees
or emoluments belonging to the office, and by means of his
usurpation thereof, an order may be granted by the judge
of the supreme court, or a district judge, for the arrest of
the defendant, and holding him to bail; and thereupon he

may be arrested, and held to bail in the same manner and with the same effect, and subject to the same rights and liabilities, as in other civil actions where the defendant is subject to arrest. Section 279: "When several persons claim to be entitled to the same office or franchise, one action may be brought against all such persons, in order to try their respective rights to such office or franchise."

It is claimed, that though this section gives the right of action against all who claim to be entitled to the same office, yet the complaint must allege a user, and inasmuch as it contains no such averment, but on the contrary shows that both the contestants claim to be entitled to an office, the term of which did not commence until a day subsequent to the suit, it shows no right of action in behalf of the people against either of them. Numerous adjudged cases have been cited in support of this position, the most important of which is that of *The People* v. *Thompson et al.*, 16 Wend. 656; but it is to be observed, that they were governed by statutes containing provisions almost precisely like those in section 274 of our act, and entirely different from the cases provided for in section 279. As the case in Wendell has been the one upon the authority of which the most reliance has been placed by those who urge the objection, I will proceed to quote from it all that is material to the question. In that case, the attorney-general filed an information in the nature of a *quo warranto*, charging the defendants with claiming, using, and exercising the liberties, privileges, and franchise of a body politic and corporate, - etc. To that portion of the information charging the defendants with claiming and exercising the liberties, etc., they answered that they never used such liberties, etc. The attorney-general demurred to the answer, for the cause that it did not meet the charge of a claim on the part of the defendants to be a body politic, and the defendants joined in the demurrer.

"By the Court, Nelson, C. J. The demurrer of the attorney-general to so much of the plea as professes to answer the first count of the information, raises the question whether, under the revised statutes, authorizing an infor-

mation in the nature of a *quo warranto,* the defendants are
bound to answer, specifically, the averment that they claim
to use and exercise a franchise, etc.   If they are obliged to
answer a mere claim to exercise corporate privileges, dis-
connected from any allegation of user, then, undoubtedly,
the plea is bad, for it contains only a denial of the user.
The defendants, if so bound to answer, should have set
forth title, or disclaimed.   The language of the statute, so
far as concerns this case, is as follows: 'An information in
the nature of a *quo warranto,* may be filed, etc., where any
person shall usurp, intrude into, or unlawfully hold or ex-
ercise any public office, civil or military, or any franchise
within the state,' etc."   The learned judge then proceeds to
say: "The first clause seems obviously to require some-
thing beyond a claim to an office, or to the exercise of a
franchise, to authorize the institution of the proceeding.
To usurp, intrude into, or unlawfully hold or exercise an
office or franchise, means to take possession of the office
or franchise without right, or unlawfully to hold or use the
same after possession has been rightfully or wrongfully ac-
quired.   The words of the statute were taken from 9 Anne,
ch. 20, sec. 4, under which act it has been repeatedly de-
termined there must be a user or possession of the office
or franchise, and that a mere claim is insufficient."   He
then refers with approval to the case of *Rex* v. *Ponsonby,*
which originated in the king's bench in Ireland (the statute
being a copy of 9 Anne), and it came before the king's
bench on error, where the judgment was reversed, which
reversal was afterwards sustained by the house of lords.
The information was filed against seven persons, charging
them with usurping the office of free burgesses of the cor-
poration of Newton.   The question whether it would lie
against two of them, who, though elected, had not been ad-
mitted or sworn in, came up in the pleadings.

Chief Justice Rider, who delivered the opinion of the
court in error, stated one question to be, "whether it, the
information, lies against the two now acting burgesses;"
and adds: "It clearly can not, upon this ground, that un-
der the words of the statute there must be usurpation, in-

trusion, or unlawful holding. Now, claiming," he says, "which only appears against them, can by no construction be taken to amount to any of these, and it would be strange to imagine the statute intended to prevent the asserting or claiming a right." If, as Chief Justice Rider. says, claiming an office does not mean a usurpation, intrusion, or unlawful holding, it is difficult to understand why, under section 279, such an averment should be required in the complaint, as the action under it clearly lies upon a mere claim. At common law a writ of *quo warranto* runs against him who claims or usurps an office. (3 Bl. Com. 262.) The statute of Anne, and the New York statute under which the cases referred to arose, differ from the common law, inasmuch as under them an action will not lie against a mere claimant to an office, while at common law it could be maintained against him. If there had been no further provision in our statute than what is found in section 274 (this being substantially like the statute of Anne, and the revised statute of New York), the cases cited upon this point as authorities would probably have been decisive, but they can not be considered as applicable to actions brought under section 279, which is an enlargement of those statutes, and embraces, as did the common law, cases where only a claim to an office is set up. A careful scrutiny of the case in Wendell and the one in king's bench, there cited, will satisfy any one that they were decided upon purely statutory grounds, and inasmuch as the statutes gave no right of action against one who only claimed an office, an allegation in an information of only a claim was not sufficient to maintain it. There can be no doubt that under our statute the people have the same right to inquire by what authority a person claims the right to an office as the crown had at common law, and there can be as little doubt that this action was properly brought for the purpose.

I might rest my argument on this point just here, without going into any further reasons to support it, but it may not be considered altogether unnecessary or unprofitable to examine the statute with a little closer attention to its several provisions, in order to arrive at a more satisfactory un-

derstanding of its true meaning. It may be assumed, as a well-settled principle of interpretation, that such construction shall be given to a statute as shall give effect to each portion of it, and that all its provisions shall be taken together, in ascertaining the intentions of the law-giver. Guided by this rule, there can be no difficulty in arriving at the conclusion, that the legislature intended to provide, in sections 274 and 279, for two distinct classes of cases, one of which covers the case of a usurpation, etc., and the other that of a mere claim to an office.

It will be seen that, under section 274, one or more persons may be proceeded against where they usurp, intrude into, or unlawfully hold or exercise an office or franchise; and the district attorney, under section 275, may, in addition, also set forth in the complaint the name of the person rightfully entitled to the office, with a statement of his right thereto. Under section 279 the proceeding may be had against all the claimants, merely on their claiming to be entitled to the office, in order to try which of them has the lawful right to it; and in such proceeding it is not necessary for the district attorney to set forth the name of the person rightfully entitled to it. When the action is brought under section 274, and proofs are made that the defendant has received fees or emoluments belonging to the office, he may be arrested and held to bail for the security of the person lawfully entitled to the office.

When suit is brought under section 279, no such proofs are required, and the defendants can not be arrested and held to bail, because the district attorney is not required to state who is lawfully entitled to the office, nor to set forth his title. The law in such cases presupposes that there has been no user by either of the parties proceeded against. The object of the section is to settle conflicting claims to an office before a user; and to carry it into effect, the claimants are required by the people, as under the writ of *quo warranto*, to show by what authority they support their respective claims. Under section 274, the action is against a wrong-doer, against one who usurps or intrudes into an office, or being in it, unlawfully holds or exercises it against

the rights of the people or of another lawfully entitled to it; and if against the latter, the defendant is liable to him for any fees or emoluments he has received while exercising the office, and in both cases, in addition, to a fine not exceeding five thousand dollars, as a penalty, to be paid into the public treasury. Under this section the judgment may be against the defendant and in favor of the claimant, or it may be against the defendant only; and in the latter case the right of the contesting claimant is not determined; while under section 279 the judgment must determine the rights of all the claimants, and no damages can be awarded or fine imposed against either; one action settles the respective rights of all, and the judgment is conclusive. It is a mere election contest, to be settled, as under the common law proceeding, by *quo warranto*, in advance of taking possession of the office by either of the contestants upon a mere claim of right thereto. But it is said, and in this view Justice Whitson concurs, that section 279 is designed to meet a case for which section 274 has not provided, as, for instance, the unlawful holding of an office by three county commissioners against the claims of those who have been elected to succeed them.

I am prepared to concede that under section 274, a joint action can not be brought against all three of the county commissioners to try by what authority they hold the office against the claims of their successors, inasmuch as the office is not a joint one, and the rights of each may depend upon entirely different questions; but while this is so, section 279 does not meet the case. This is evident from the language of the section, and besides, the difficulty of trying the right to an office held by two or more persons, and by different titles in a joint action, which would be met with in case the suit should be brought under section 274, would necessarily arise, when brought under this section. If the language of the section had been, "when several persons claim to exercise the office by different rights," it would have covered the supposed case.

In the case of the county commissioners, it would be an extraordinary circumstance if they were each elected by

the same majorities and the same votes, and it would only be in such cases that ,their claims to the office could be tried in a joint action. It is not to be supposed that the legislature contemplated such an extreme or improbable case, and that this law was designed to meet it. It may be asked, if this section does not give the right of action in the supposed case, how can questions of this character be judicially determined? The answer is obvious. The respective rights of the incumbents to hold the office may be tried in separate actions under section 274. But it is claimed that where several persons claim to be entitled to the same office, as under section 279, it must be held to be to an office in *prescænti,* one of which the successful claimant can take possession, under and by virtue of the judgment in his favor, at once. This is a very narrow and technical view of its meaning. Suppose this action had not been brought until Lindsay had taken possession and was exercising the duties of the office, and that judgment had been in favor of Bryon, can it be contended that he would be immediately entitled to take possession of it? He must first get his commission, give bond, and take the oath of office; in other words, he must comply with the requirements of the law, before he can enter upon the office and undertake its duties. The section means nothing more, than if judgment is given in favor of one of the claimants, he shall be entitled to the office when his term commences; and when he shall have complied with the law in other respects, a judgment in his favor would be subject to the conditions prescribed by law, and would not *ex proprio vigore* operate to invest him with the office *eo instanti,* were there any other requirements of the law to be observed.

Again, it is claimed that the act under consideration does not give this right of action, because the legislature has provided another mode of contesting elections, in the act passed December 17, 1864. It is true this act has made such provision; and though it is contended that the probate court had no authority (as therein provided) under the organic act to entertain jurisdiction, yet I am not disposed to place my answer upon that ground.

The act under which this suit was brought, was passed on the fifteenth of December, 1864, and was the only one then in force, under which an election contest could be had. Had there been no saving clause or provision in the act of December 17, it might have been contended, with some show of reason, that it was not the intention of the legislature to preserve the power in the district courts to decide such contests; but section 40 expressly provides that the act shall not be construed so as to impair in any way the right of any person to contest any election in the manner otherwise provided by statute. This must refer to the statute under which this action is brought, for, as I have said, this was the only statute on the subject in force, when the latter act was passed. Great stress has been laid upon the fact, that the act in question has provided that judgment of exclusion shall be given against the defendant, if found guilty; and that because, as is claimed, no such judgment can be pronounced in this case, the action is not well brought. It may be answered, that such a position is not tenable, because the conclusion drawn from the premises is not sound.

The term "exclude," used in the act, does not mean *ouster* from, or *dispossession of*, an office, but, that if a party is guilty, he shall be debarred, or precluded, or hindered from entering into or holding it; and the omission in the statute of a case where only a *claim* to an office is adjudged to be unlawful, does not prevent its application to the latter, by fair construction. The judgment of the district court, that Lindsay be "precluded" from the office, is not therefore obnoxious to the criticisms that have been indulged in by those who object to its form, as not being authorized by the statute. The whole argument of counsel, who seek a reversal of the judgment on the ground that the complaint is not sufficient, is nothing more or less than this, that in every conceivable action which the statute authorizes, a user must be alleged, or it must fail. If this view be correct, for what purpose, may I ask, was section 279 enacted? If it is necessary to make the same allegations in a complaint, in this respect, when the action is brought

under this section or under section 274, then the conclusion is inevitable, that the section is meaningless, for the latter covers every case that can arise under the other section.

It is said that the complaint does not show that Bryon and Lindsay claimed to be entitled to the office, but it shows that in about two months from that time, that is, on the first Monday in January, 1871, they may claim that they will be entitled to the possession of said office. What the complaint does allege is, "that on the sixth day of June, 1870, at a general election held in the county of Ada of this territory, pursuant to the statute, for the election, among other officers, of a sheriff of said county for the term of two years from the first Monday of January, 1871, the said L. B. Lindsay and William Bryon were each candidates for said office, and were each voted for by the qualified electors of said county for the said office, for the said term. That the number of votes received by each of said defendants was nearly equal, and each of the defendants claims to have received the highest number of votes given and cast at said election by the legal voters of said county for said office for the term aforesaid, and to be entitled to the said office of sheriff of said county for the said term of two years from and after the first Monday in January, A. D. 1871." It is quite obvious that this is not a mere allegation, that on the first Monday in January they (the defendants) may claim that they will be entitled to the possession of the office.